# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL CASE NO. 5:18-cv-00058-MR

| | |
|---|---|
| MARCUS JACK GROSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **MEMORANDUM OF** |
| | ) **DECISION AND ORDER** |
| ANDREW SAUL, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 11] and the Commissioner's Motion for Summary Judgment [Doc. 14].

## I.    BACKGROUND

On July 17, 2014, Marcus Jack Gross (the "Plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of June 16, 2014.  [Transcript ("T.") at 41, 104, 118].   The Plaintiff's request was initially denied on December 22, 2014, and upon reconsideration on March 11, 2015.  [Id. at 41].  On the Plaintiff's request, a hearing was held on January 26, 2017 before an Administrative Law Judge ("ALJ").  [Id.].  On March 10, 2017, the

ALJ issued a written decision denying the Plaintiff benefits, finding that the Plaintiff was not disabled within the meaning of the Act since the alleged onset date of June 16, 2014. [Id. at 38]. On February 3, 2018, the Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 23-27]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla

of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

## III.   THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security

Act, as relevant here, is "[the] inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A).   The Social Security Administration Regulations

set out a detailed five-step process for reviewing applications for disability.

20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th

Cir. 2015).   "If an applicant's claim fails at any step of the process, the ALJ

need not advance to the subsequent steps."  Pass v. Chater, 65 F.3d 1200,

1203 (4th Cir. 1995) (citation omitted).   The burden is on the claimant to

make the requisite showing at the first four steps.   Id.

At step one, the ALJ determines whether the claimant is engaged in

substantial gainful activity.    If so, the claimant's application is denied

regardless of the medical condition, age, education, or work experience of

the claimant.   Id. (citing 20 C.F.R. § 416.920).   If not, the case progresses to

step two, where the claimant must show a severe impairment.  If the claimant

does not show any physical or mental deficiencies, or a combination thereof,

which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative

work which exists in substantial numbers in the national economy.  Id.; Hines

v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006).  "The Commissioner typically

offers this evidence through the testimony of a vocational expert responding

to a hypothetical that incorporates the claimant's limitations."  20 C.F.R. §§

404.1520, 416.920; Mascio, 780 F.3d at 635.  If the Commissioner succeeds

in shouldering his burden at step five, the claimant is not disabled and the

application for benefits must be denied.  Id.  Otherwise, the claimant is

entitled to benefits.

## IV.   THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff had not engaged in

substantial gainful activity since his alleged onset date, June 16, 2014.  [Id.

at 43].  At step two, the ALJ found that the Plaintiff has the following severe

impairments: degenerative disc disease of the lumbar spine; left knee pain;

obesity; and urinary incontinence.  [Id.].  At step three, the ALJ determined

that the Plaintiff does not have an impairment or combination of impairments

that meets or medically equals the Listings.  [Id. at 45].  The ALJ then

determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform a range of light work as defined in 20
> CFR 404.1567(b) such that he can lift up to 20
> pounds occasionally, lift and carry up to 10 pounds
> frequently, stand and walk with normal breaks for
> about 6 hours in an 8-hour work day, and sit with
> normal breaks for about 6 hours in an 8-hour work

day. He can never climb ladders, ropes, or scaffolds, but he can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. He can have no exposure to excessive vibration, unprotected heights, or hazardous machinery. The claimant can perform only simple, routine tasks due to the combination of pain and side effects of medication.

[Id. at 45].

At step four, the ALJ found that the Plaintiff is "unable to perform any past relevant work." [Id. at 50]. At step five, based upon the testimony of the VE, the ALJ concluded that, considering the Plaintiff's age, education, work experience, and RFC, the Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including garment sorter, packer, and sorter. [Id. at 51]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from June 16, 2014, the alleged onset date, through March 10, 2017, the date of the decision. [Id. at 52].

## V. DISCUSSION[1]

### A. Appointments Clause

Without filing a separate motion apart from his Motion for Summary Judgment, the Plaintiff argues as an assignment of error that his case must

---

[1] Rather than set forth the relevant facts in a separate section, the Court has incorporated the relevant facts into its legal analysis.

be remanded based on the Supreme Court's reasoning in Lucia v. SEC, 138 S. Ct. 2044, 201 L.Ed.2d 464 (2018). [Doc. 12 at 18]. Specifically, the Plaintiff argues that the process for appointing the ALJ in this case did not comply with the Appointments Clause of the Constitution, Article II, Section 2. [Id.]. As such, the Plaintiff argues that he is entitled to a new hearing before a properly appointed ALJ. [Doc. 16 at 2-3]. The Plaintiff, however, never raised an Appointments Clause argument during his proceedings before the ALJ. [T. at 59-92].

The Supreme Court held in Lucia that the ALJs of the Securities and Exchange Commission, by the nature of their duties, are "Officer[s] of the United States," and therefore must be nominated by the President and confirmed by the Senate, or otherwise installed consistent with the Appointments Clause. 138 S. Ct. at 2055. The Plaintiff asserts that the holding in Lucia applies equally to Social Security ALJs.

In Lucia, however, the Supreme Court held that only "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." Id. (quoting Ryder v. United States, 515 U.S. 177, 182-183 (1995)). The plaintiff in Lucia timely contested the validity of the ALJ's appointment by raising the challenge before the Securities and Exchange Commission, as well as in the Court of

Appeals and the Supreme Court.  Id.  In the present case, however, Plaintiff

has forfeited this issue by failing to raise it during his administrative

proceedings.  See, e.g., Garrison v. Berryhill, No. 1:17-cv-00302-FDW, 2018

WL 4924554 (W.D.N.C. Oct. 10, 2018) (citing Meanel v. Apfel, 172 F.3d

1111, 1115 (9th Cir. 1999)).

The Plaintiff argues that the Supreme Court had not yet decided Lucia

when the Appeals Council issued its decision in this case.  [Doc. 12 at 18].

Plaintiffs, however, can forfeit review of issues that the Supreme Court has

not yet resolved by failing to raise them before the agency.  See N.L.R.B. v.

RELCO Locomotives, Inc., 734 F.3d 764, 797 (8th Cir. 2013) (finding that

the plaintiff waived their Appointments Clause challenge by failing to timely

raise it before the agency even though the Supreme Court opinion at issue

was issued after the agency proceeding).

For these reasons, the Plaintiff's assignment of error is without merit.

**B.    Urinary Incontinence**

As another assignment of error, the Plaintiff alleges that the ALJ failed

to properly account for the limiting effects of the Plaintiff's urinary

incontinence in the RFC findings.  [Doc. 12 at 15].  Specifically, the Plaintiff

argues that "the ALJ's failure to perform the function-by-function analysis

required, failure to provide a narrative discussion describing how the

evidence supports each of his conclusions and his failure to explain how he considered contradictory evidence, prevents meaningful review of the RFC findings."  [Id. at 18].

SSR 96-8p explains how adjudicators should assess a claimant's RFC. It instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[2]  SSR 96-8p; see also Mascio, 780 F.3d at 636 (noting that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).  For the ALJ to do so, the RFC must "[s]et forth a logical explanation of the effects of the symptoms . . . on the individual's ability to work."  Id.  Additionally, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

---

[2] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions."  20 C.F.R. § 416.945.

medical and other evidence." Id. "[T]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." Id. (emphasis added).

Here, the ALJ found that the Plaintiff's the urinary incontinence was a medically determinable impairment that constituted "more than a slight abnormality and could reasonably be expected to have caused more than a minimal effect on the [Plaintiff]'s ability to perform basic work-related activities . . . ." [T. at 43]. The ALJ further found that the Plaintiff's urinary incontinence was a "severe impairment." [Id.]. In the RFC, the ALJ noted that the Plaintiff testified that "he has to go 12 or 15 times per day to the rest room, and has urinated on himself in his sleep." [Id. at 46]. The ALJ also found that:

> The claimant also began to suffer urinary urgency in February 2015. He continued to report urinary issues regularly in examinations through December 2016, for which he took Flomax, which he reported as helping with urinary issues. Ms. Fohr noted in October 2016 that the claimant's urologist, Tink Johnson, III, M.D., believed that the urinary incontinence was due to overmedication. The objective record does not include examinations or reports by Dr. Johnson. The overall record suggests that urinary incontinence is a problem for the claimant that is at least partially controlled by Flomax, and may or may not be related to his pain medication,

and might be further controlled with medication adjustment.

[Id. at 47].

The ALJ, however, did not include any limitations in the RFC related to the Plaintiff's urinary incontinence. [Id. at 45]. The ALJ also never provided a conclusion regarding his findings related to the Plaintiff's urinary incontinence beyond stating "that urinary incontinence is a problem for the claimant that is at least partially controlled by Flomax, and may or may not be related to his pain medication, and might be further controlled with medication adjustment."[3] [Id. at 47]. As such, the ALJ failed to relate any of the information regarding the Plaintiff's urinary incontinence to any particular limitation or limitations in the RFC assessment. See Mercure v. Berryhill, No. 1:16-CV-131-MR, 2017 WL 3301364, at *4 (W.D.N.C. Aug. 1, 2017). While the ALJ's ultimate conclusions as to the Plaintiff's limitations may be correct, the Court is left to guess regarding how they were reached. Mascio, 780 F.3d at 637. Under these circumstances, the Court cannot affirm the

---

[3] The ALJ stated that the Plaintiff's urinary incontinence is "partially controlled" by Flomax." [T. at 47]. The Court notes, however, that Flomax has been found to "cause incontinence[,]" PENN STATE HEALTH MILTON S. HERSHEY MED. CTR., *Urinary Incontinence*, http://pennstatehershey.adam.com/content.aspx?productId=10&pid=10&gid=000050 (last visited, Sept. 12, 2019), and that the Plaintiff's urologist stated that the Plaintiff's urinary incontinence believed he was "overmedicated." [T. at 642].

ALJ's finding of no disability without a showing of substantial evidence to support his findings at each step of the sequential evaluation process.  Id.

## VI.    CONCLUSION

Because this Court lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling.  See Radford, 734 F.3d at 295.  On remand, the ALJ should conduct a proper function-by-function analysis of the Plaintiff's exertional and non-exertional limitations, narratively discussing all of the relevant evidence, and specifically explaining how he reconciled the evidence to make his conclusions.[4]

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 11] is **GRANTED**, and the Commissioner's Motion for Summary Judgment [Doc. 14] is **DENIED**.  Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.  A judgment shall be entered simultaneously herewith.

---

[4] Because the Court has determined that a remand is necessary on this ground, the Court need not address the Plaintiff's other assignments of error.

**IT IS SO ORDERED.**

Signed: September 16, 2019

Martin Reidinger
United States District Judge